**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Nicole Marti, Cara Belisle, and Alexis Volden, | Court File No. 22-cv-1830 |
| *Plaintiffs*, | |
| *vs* | **COMPLAINT** |
| The Mayo Clinic, a Minnesota non-profit corporation, | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

Plaintiffs Nicole Marti ("Plaintiff Marti"), Cara Belisle ("Plaintiff Belisle"), and Alexis Volden ("Plaintiff Volden") (all Plaintiffs collectively "Plaintiffs") make the following allegations for their Complaint against Defendant The Mayo Clinic ("Defendant Mayo").

## INTRODUCTION

1.     In October, 2021, Defendant Mayo mandated that all its employees, including employees of its related corporations receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of the Defendant Mayo's employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiffs filed requests for a religious exemption with Defendant Mayo to be exempt from taking the Covid-19 vaccination.  Defendant denied the requested religious exemptions.  In addition, Defendant failed to undertake an individual interactive process with any of the Plaintiffs as required for evaluating

religious exemption requests.  Defendant terminated each of the Plaintiffs' employment based solely on Plaintiffs refusal to take the Covid-19 vaccine. However, only a couple of months after terminating Plaintiffs, Defendant reversed part of its Vaccine Mandate regarding testing, demonstrating that the terminations of Plaintiffs were either unnecessary or a pretext.

2.     Based on Defendant's implementation of the Vaccine Mandate and its refusal to grant Plaintiffs their requests for religious exemptions, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

3.     Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.     This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.     This Court has personal jurisdiction over Defendant Mayo as it is a non-profit corporation operating in and located in the State of Minnesota.

6.     Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

7.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and each Defendant conducts business in the State of Minnesota.

## PARTIES

8.     Plaintiff Marti is a Dodge County, Minnesota resident who worked for Defendant Mayo as a registered nurse.  Plaintiff Marti worked for Defendant Mayo for over 20 years.

9.     Plaintiff Belisle is a Goodhue County, Minnesota resident who worked for Defendant Mayo as a cytogenetics laboratory technologist.  Plaintiff Belisle worked for Defendant Mayo for approximately 20 years.

10.     Plaintiff Volden is an Olmsted County, Minnesota resident who worked for Defendant Mayo as an HR representative and worked in a remote setting in a call center. Plaintiff Volden worked for Defendant Mayo for eight years;

11.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

**FACTS**

12.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendant.

13.     Defendant recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated.  On September 28, 2021 the President and CEO of Defendant Mayo (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Defendant's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day*."

14.     However, just two weeks later, Defendant implemented its Vaccine Mandate for Defendant's employees.  The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

4

15.     Defendant announced its Vaccine Mandate on October 13, 2021.
Defendant's Vaccine Mandate required all staff to become vaccinated against Covid-19,
and that if such staff were not already vaccinated or only partially vaccinated, they would
have to become vaccinated or be approved for a medical or religious exemption by
December 3, 2021, or be terminated.

16.     On October 25, 2021, Defendant sent a communication to its employees
outlining the steps to comply with the Covid-19 vaccination policy.  Beginning on
December 3, 2021, Defendant issued Final Written Warnings to noncompliant staff with
instructions on complying by January 3, 2022, or be terminated.

17.     Defendant announced that there were both medical and religious
exemptions from the Vaccine Mandate, and did allow for employees to apply for
"*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*"
for such applications.

18.     However, what Defendant gave with one hand, it took away with the other
by proclaiming that "*it is anticipated that a <u>small number of staff will have a qualifying
religious exemption</u>.*"  (emphasis added)  Defendant further wrote: "*applications for a
religious exemption will be denied if the panel determines the applicant <u>does not
demonstrate a sincerely held religious belief</u>,* (emphasis added).  Further, Defendant
declared: *"[o]nly a <u>small number of staff are expected to qualify for a religious
exemption</u>."* (emphasis added).

19.     Defendant thus put itself in the position of deciding the sincerity of the
religious belief of the Plaintiffs and, whether a belief was "religious" or not.

20.     Defendant also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for Covid-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*." Other medical conditions were preemptively discounted or disregarded.

21.     The pre-determined limitations on their religious and medical exemption policies were supposed to be kept in the dark, as Defendant wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so please do not share broadly*." (emphasis added).

22.     Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Marti requested a religious exemption from Defendant Mayo, which Defendant Mayo denied. Plaintiff Marti also submitted a request for reconsideration from Defendant Mayo of its denial of the request for Plaintiff Marti's religious exemption. Defendant Mayo denied Plaintiff Marti's request for reconsideration. Defendant Mayo did not provide Plaintiff Marti with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Marti's request for reconsideration.

23.     Plaintiff Marti is a Christian and believes that her body is a Temple of the Holy Spirit. Accordingly, she must honor God by responsibly caring for her body and controlling what goes into her body, and not put into it experimental drugs. Plaintiff

Marti cannot consistent with her conscience or religious beliefs, take the Covid-19 vaccines as she sincerely believes it would defile her body and be a sin against God.

24.     Plaintiff Marti received numerous positive job performance reviews from Defendant Mayo, including that: "Nicole has been a great addition to ENT and is a great resource," and "Nicole is an excellent nurse."

25.     Plaintiff Marti was 45 years old at the time of her termination and had worked for Mayo for 20 years.

26.     Plaintiff Marti contracted Covid-19 in October 2020 and recovered prior to her termination, which has provided her with natural immunity.

27.     Plaintiff Marti was aware of acquaintances or patients who suffered adverse health impacts after receiving the vaccine, including cardiac events, tachycardia.

28.     Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Belisle requested a religious exemption from Defendant Mayo, which Defendant Mayo denied. Plaintiff Belisle also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff Belisle's attempt to request reconsideration of the denial.  Defendant Mayo did not provide Plaintiff Belisle with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Belisle's request for a religious exemption.

29.     Plaintiff Belisle is a Christian who believes her body is a Temple of the Holy Spirit that she must keep pure and undefiled.  Plaintiff Belisle cannot allow

7

unwanted intrusions into her body, and to do so would be sinful. Based on prayer and her study of Scripture Plaintiff Belisle cannot to take the Covid-19 vaccine.

30.     Further, Defendant Mayo granted a number of religious exemptions to physicians and employees in other positions of greater need, while Defendant Mayo denied Plaintiff Belisle's request for a religious exemption to taking the Covid-19 vaccine.

31.     Plaintiff Belisle contracted COVID-19 in November 2021 and recovered prior to being terminated. Plaintiff Belisle accordingly has natural immunity to COVID-19.

32.     Plaintiff Belisle was 53 years old when she was terminated and was near the top of the pay scale.

33.     Plaintiff Belisle worked remotely for 18 months and remained healthy. Defendant Mayo offered Plaintiff Belisle the opportunity to work remote 100% of the time. Plaintiff accepted Defendant Mayo's offer to continue to work remotely, and follow masking, social distancing, and symptom self-screening. She was approved by Defendant Mayo for "long-term remote work," yet was still required to be vaccinated.

34.     Plaintiff Belisle received numerous positive job performance reviews including "she has the expertise and the friendly willing attitude that make her a go-to person for the rest of the hereditary team," and "she has excelled in her new environment [remote working from home]."

35.     Plaintiff Belisle was aware of doctors and staff who were convinced the COVID-19 vaccines were causing significant numbers of young people to have heart problems.

36.     Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Volden requested a religious exemption from Defendant Mayo, which Defendant Mayo denied. Plaintiff also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff's attempt to request reconsideration of the denial.  Defendant Mayo did not provide Plaintiff with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff's request for a religious exemption.

37.     Plaintiff Volden is a Christian and has prayed for guidance in determining whether to be vaccinated.  Through her prayer she has discerned that God has not called her to receive the vaccine.

38.     Plaintiff Volden contracted Covid-19 in September 2021 and recovered prior to her termination, which provided her with natural immunity.

39.     Plaintiff Volden worked 100% remotely and was never in a Mayo building, and therefore posed no risk to transmitting COVID-19 to any patients or employees.

40.     Plaintiff Volden received positive job performance reviews from Defendant Mayo.  Plaintiff Volden was also at the top of her pay scale for employees in her position.

41.     Plaintiff Volden is familiar with patients and other people who suffered illnesses shortly after receiving the Covid-19 vaccine, including those who have suffered strokes or stroke-like symptoms. One co-worker passed away shortly after receiving the vaccine.

42.     After Defendant had told Plaintiffs that Defendant had denied their requests for religious exemptions and requests for reconsideration, Defendant also instructed the Plaintiffs: "*Do not distribute, forward, or copy the content of this notification*."

43.     Defendant Mayo terminated Plaintiff Marti on January 3, 2022.  Plaintiff Marti filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Marti a Right to Sue letter dated April 21, 2022.

44.     Defendant Mayo terminated Plaintiff Belisle on March 14, 2022. Plaintiff Belisle filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Belisle a Right to Sue letter dated April 28, 2022.

45.     Defendant Mayo terminated Plaintiff Volden on January 3, 2022.  Plaintiff Volden filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Volden a Right to Sue letter dated April 28, 2022.

46.     Defendant created an ad hoc panel to review exemption requests for taking the Covid-19 vaccine. As noted above, each of the Plaintiffs submitted requests for an exemption, but Defendant denied nearly every request for religious exemption, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

47.     As a result of Defendant's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including each of the Plaintiffs, who all refused to be injected with the Covid-19 vaccine and whom Defendant terminated as a result.

48.     In issuing the denials for requests for a religious exemption from taking the Covid-19 vaccine, Defendant sent such employees, including Plaintiffs, the same boilerplate language:

> "*Thank you for submitting your request for religious exemption.  The information you provided was carefully considered.  While this may not be the news you were hoping to receive, your religious accommodation has not been approved.  Based on the information provided, your request did not meet the criteria for a religious exemption accommodation*."

49.     Defendant conducted no case-by-case analysis or individualized interactive process to discuss each of the Plaintiff's religious exemption requests or possible accommodation of their religious objections. In response to employee requests for explanation or information regarding Defendant's processes for evaluating religious exemptions requests from employees seeking a religious exemptions to taking the Covid-19 vaccine, Defendant wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision."  Rather than engage in a legitimate interactive process, respect the sincerity of its employees', including Plaintiffs', religious beliefs, or attempt any reasonable accommodation, Defendant sent its employees more boilerplate language to justify its pre-determined result:

"*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the Covid-19 vaccine.*"

50.     Defendant actually specifically disavowed an individual interactive process for evaluating requests for a religious exemption to taking the Covid-19 vaccine writing: "Specific feedback on individual requests will not be provided, it is not possible to provide individual feedback."

51.     Plaintiffs sought further clarification of Defendant's criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendant determining that each of the Plaintiffs did not have a "sincerely held religious belief." However, Defendant refused to respond to these individual requests for clarification and rather simply sent each of the Plaintiffs the identical generalized language in Defendant's letters.

52.     In its form denial letters, Defendant announced that it would accept appeals of its uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here.*" Each of the Plaintiffs took advantage of that process and submitted additional information to Defendant.

53.     Following each of the Plaintiffs' requests for reconsideration of their requests for a religious exemption to taking the Covid-19 vaccine, Defendant again issued identical denial letters to each of the Plaintiffs and nearly every employee who appealed a denial of a request for a religious exemption to taking the Covid-19 vaccine. Defendant's transmittal email messages stated: "*Unfortunately, the additional*

12

*information you provided did not change the outcome as it did not meet the criteria for a religious accommodation*.”  Again, Defendant engaged in no interactive process to evaluate the requests for religious exemptions.

54.     Defendant did not provide information to its employees, including each of the Plaintiffs, about how Defendant determined whether the religious beliefs of those employees who submitted requests for a religious exemption to taking the Covid-19 vaccine were sincerely held or whether those religious beliefs would be accommodated.

55.     Defendant's original denial of each of the Plaintiffs' requests for a religious exemption and Defendant's denial of each of the Plaintiffs' requests for reconsideration of the denial of their requests for a religious exemption to taking the Covid-19 vaccine contained this warning at the bottom: “*Do not disseminate, distribute, forward, or copy the content of this notification*.”

56.     Defendant further instructed its employees to *“endorse the vaccine or say nothing.”*

57.     Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs, with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendant's *ad hoc* panel nevertheless denied each of the Plaintiffs' requests for a religious exemption and Defendant made no effort to accommodate their requests for a religious exemption. Further, Defendant never considered allowing Plaintiffs to be accommodated by simply doing their job in the way they had been doing it for over one and one-half years prior to the Vaccine Mandate,

which in the case of the Plaintiff Belisle and Plaintiff Volden meant simply allowing them to continue to work remotely.

58.     Defendant, in issuing the Vaccine Mandate, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

59.     Defendant issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

60.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

61.     The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

62.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all

have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant has done as set forth above.

63.   Early on in the Covid-19 pandemic, and before any vaccines were available, Defendant provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*"

64.   Rather than disclosing the results of its determination on the numbers of Defendant's "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendant has not made public this information and instead simply issued its Vaccine Mandate.

65.   On March 8, 2022, Defendant announced it would suspend the testing program portion of its Vaccine Mandate.  As a result, Defendant's remaining unvaccinated employees are now treated similarly to vaccinated employees.

66.   After terminating each of the Plaintiffs, Defendant suspended weekly testing effective March 14, 2022.  This means that employees who would have had their religious exemptions granted, contingent on weekly testing, and were terminated between January 2022 and March 8, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant has now determined was unnecessary.

## FIRST CAUSE OF ACTION

### Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

67.    Plaintiffs restate and reallege paragraphs 1 through 66 as if fully set-forth herein.

68.    Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

69.    Each of the Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

70.    Plaintiffs have sincerely held religious beliefs which prevented them from receiving the vaccine.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

71.    Each Plaintiff informed Defendant of the conflict between their religious beliefs and taking the Vaccine Mandate.

72.    Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

73.    The Act prohibits Defendant from scrutinizing what the Defendant believes to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendant believes the exercise of those religious beliefs should be.

74.    Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of

16

undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

75.     In response to Plaintiffs' request for reasonable accommodation of their sincerely-held religious beliefs, Defendant and its ad hoc panel applied a uniform, blanket rule in rejecting Plaintiffs' requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

76.     Despite the Plaintiffs' consistent requests for Defendant to engage in an interactive process regarding their requests for accommodation, Defendant refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests for an exemption for identical reasons as other of the Defendant's employees using an identical form letter.

77.     As set forth above, Defendant could have accommodated Plaintiffs' requests for a religious exemption without suffering any undue hardship by having them continue to do their job the same as they had done for the last one and one-half years of their employment.

78.     Defendant's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

79.     Because of Defendant's unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA §363A.08

80.     Plaintiffs restate and reallege paragraphs 1 through 79 as if fully set-forth herein.

81.     Minn. Stat. §363A.01, et seq. prohibits discrimination in employment based on religion.

82.     Defendant Mayo is an "employer" within the meaning of Minn. Stat. §363A.01.

83.     Plaintiffs are "employees" within the meaning of Minn. Stat. §363A.01.

84.     The Plaintiffs have sincerely held religious beliefs which prevented them from receiving the Covid-19 vaccine.

85.     The Plaintiffs informed Defendant Mayo of the conflict between their religious beliefs and the Vaccine Mandate.

86.     Minn. Stat. §363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

87.     Minn. Stat. §363A.01 et seq. prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of the Plaintiffs' religious beliefs, or whether the Plaintiffs' exercise of their beliefs is logical or as consistent as Defendant Mayo believes the exercise of those religious beliefs should be.

88.     In response to the Plaintiffs' requests for reasonable accommodation of their sincerely-held religious beliefs, Defendant Mayo's *ad hoc* panels applied a uniform,

18

blanket rule in rejecting nearly all, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

89.     Despite the Plaintiffs' requests for Defendant Mayo to engage in dialogue regarding their respective requests for a religious exemption, Defendant Mayo refused throughout to engage in the interactive process, and instead Defendant Mayo terminated each of these Plaintiffs for generalized reasons, using identical form letters.

90.     Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. §363A.01 et seq.

91.     Because of Defendant Mayo's unlawful actions, the Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

### THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under
### the ADA, 42 U.S.C. § 12101 *et seq.*

92.     Plaintiffs restate and reallege paragraphs 1 through 91 as if fully set-forth herein.

93.     Defendant is an "employer" within the meaning of 42 U.S.C. §12111(5)(A).

94.     Each of the Plaintiffs was an "employee" of Defendant employer within the meaning of 42 U.S.C. §12111(4).

95.     The ADA, at 42 U.S.C. §12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

96.     Defendant's Vaccine Mandate violated 42 U.S.C. §12112 (d)(4)(a).

97.     As a result of Defendant's actions in violation of the ADA, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

## Wrongful Discharge - Minnesota Refusal of Treatment Statute

98.     Plaintiffs restate and reallege paragraphs 1 through 97 as if fully set-forth herein.

99.     Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id*. §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… *individuals* have a f*undamental right* to *refuse* medical treatment, testing, physical or mental examination, *vaccination*, participation in experimental procedures and protocols, …".  *Minn. Stat. §12.39, Subd. 1* (emphasis added).

> Further, "before performing … vaccination of an individual … a *health care provider* shall *notify the individual* of the *right to refuse* the … *vaccination,* ….".  *Minn. Stat. §12.39, Subd. 2 (*emphasis added*).*

20

100.    The Plaintiffs are "individuals" who have a "fundamental right" to "refuse medical treatment" and "vaccinations."

101.    Defendant Mayo is a "health care provider" (*Minn. Stat. §12.39, Subd. 2*), who is obligated to "notify the individual of the right to refuse vaccinations." Further, the underlying policy applies to "private agencies of every type" (*Minn. Stat. §12.02, Subd. 2*).

102.    The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

103.    The Plaintiffs have objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of the Plaintiffs' refusal to accede to Defendant Mayo's Vaccine Mandate, the Plaintiffs have been harassed, suspended, discharged (explicitly or constructively), and had their earned benefits taken away.

104.    Defendant Mayo's actions in punishing the Plaintiffs for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendant Mayo admitted in 2021 that Covid-19 vaccinations could not be mandatory and must instead be voluntary.

105.    Defendant Mayo partially changed its policy in October, 2021. Subsequently, in March, 2022, Defendant Mayo changed its Vaccine Mandate again to no longer require weekly testing for unvaccinated employees.

106.    As a result of the Defendant Mayo's illegal actions taken against the Plaintiffs, the Plaintiffs have suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

107.    Plaintiffs restate and reallege paragraphs 1 through 106 above as if fully set-forth herein.

108.    Defendant had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

109.    Defendant wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

110.     Defendant's policies and statements created a contract between it and its employees.

111.    Defendant's actions in terminating the respective Plaintiff who worked for one of the Defendant, discriminating against them on the basis of their religious beliefs, constitutes a breach of that contract.

112.    Plaintiffs have been damaged by Defendant's breach of contract.

113.    In the alternative, Defendant's promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiffs, relied to their detriment. Defendant's promises to its employees, including Plaintiffs, should be enforced to avoid injustice.

### JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendant for an Order of the Court as follows:

1.    Adjudging that Defendant is liable to each of their respective employee Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.    Enjoining Defendant from taking further illegal action against each of the Plaintiffs in violation of both state and federal law, and Ordering Defendant to take action to restore each of their respective employee Plaintiffs to their positions they would have enjoyed absent Defendant's illegal conduct;

3.    Awarding each of the Plaintiffs their costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.      Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not heave a scientific basis.

Dated: July 20, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
William F. Mohrman, 168816
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
Email: mohrmanr@mklaw.com
*Attorneys for Plaintiffs*